## Coffman *against* Hampton.

The docket of a justice of the peace is the best evidence to show the cause of action before him; and parol evidence is inadmissible to contradict or vary it.

A purchaser at auction " for cash before removal of the goods," is liable in a suit by the vendor, unless he show an offer to pay the price and remove the goods purchased, or that the plaintiff prevented it.

In such case, if the purchaser, not having the cash, agree to meet the next day and settle, he is liable if the vendor have the goods ready at the time fixed, and the purchaser fail to meet at that time and pay for the goods; and a subsequent tender of the price is not sufficient, if it does not embrace costs subsequently incurred in removing and preserving them; but the vendor may proceed to a re-sale.

If the proceeds of the re-sale exceed the price of the first sale, but do not cover the costs of removing and preserving the goods, the vendee is liable for such costs.

A purchaser at constable's sale cannot, in a suit against him by the constable to recover the amount of his bid, set-off a claim for rent due him as landlord, nor *vice-versâ.*

Where a purchase is made at auction of numerous articles of personal property, at one and the same time, and from the same vendor, the whole constitutes but one entire contract, though the articles purchased are struck off separately, at separate and distinct prices.

ERROR to the Common Pleas of *Chester* county.

This suit was originally brought by John Hampton (constable) against Dr. Isaac Z. Coffman, in January 1840, before a justice of the peace, " for $2.23, for a deficiency on a sale for account of a former purchaser," as the cause of action was stated on the docket of the justice. On the hearing, the defendant exhibited a claim of set-off to the amount of $47.50, which was disallowed by the jus·tice, who gave judgment for the plaintiff for $3.76½. The defendant demanded an appeal, and tendered bail. The justice refused it. On the 11th of February 1840, a rule of the Court of Common Pleas was taken on the justice to show cause why an appeal should not be allowed, which, on argument, was made absolute.

The plaintiff filed his declaration, containing three counts: the

[Coffman v. Hampton.]

first of which complained, that whereas the plaintiff, on the 25th day of October 1839, at the county of Chester aforesaid, put up and exposed to sale by public auction, amongst other things, one fork, one grindstone, wheelbarrow, four pigs, and a lot of corn, then and there being, upon condition that the highest and best bidder should be the purchaser, and that the person or persons purchasing any article or articles, should pay the cash therefor to the said John Hampton, constable, of all of which premises the said defendant, before and at the time when the said goods were so put up and exposed to sale as aforesaid, to wit, on the day and year aforesaid, had notice, and thereupon, &c. in consideration of the premises, and that the plaintiff, at the special instance and request of the defendant, had then and there undertaken and faithfully promised the defendant to perform and fulfil said conditions and agreements in all things on his part and behalf to be performed and fulfilled; he [the said defendant] undertook, and then and there faithfully promised the said plaintiff to perform and fulfil the said conditions and agreement in all things on his part and behalf to be performed and fulfilled; and the said plaintiff says that afterwards, to wit, &c., the defendant became and was the highest and best bidder for, and declared the buyer of the said goods so put up and exposed to sale, and subject to the said conditions, at and for the sum of $34.91, then and there bid by the said defendant for the same, and which said goods, at the time the same were purchased by the defendant, remained and continued in the custody and possession of the plaintiff from thence continually till the fifth day of November then next; and although the plaintiff, during all that time, was ready and willing to suffer and permit, and would have suffered and permitted, the said defendant to take and carry away the same on payment of the purchase money therefor—and although the said plaintiff hath hitherto always well and truly performed and fulfilled the said conditions of sale in all things therein contained, on his part and behalf to be performed and fulfilled, yet the said defendant, not regarding his said promise and undertaking, did not nor would, although often requested, take or carry away the said goods, or pay the said purchase money for the same, but hath hitherto neglected and refused so to do, to wit, at the county aforesaid, whereby the plaintiff has sustained damage to the amount of $80.

The second count was an *indebitatus assumpsit* "for divers goods, wares, and merchandise," bargained and sold by the plaintiff to the defendant.

The third count was a *quantum meruit* "for divers other goods, wares, and merchandise," bargained and sold by the plaintiff to the defendant.

The defendant pleaded *non assumpsit*, and set-off for money had and received by the plaintiff for his use. Also, a further plea of set-off, setting forth that before and at the time of the commence-

[Coffman v. Hampton.]

ment of this suit, the plaintiff was and still is indebted to the defendant in a large sum of money, to wit: in the sum of $41.29, for that heretofore, to wit, on the 8th day of January 1839, a certain Elijah Steward, before Edward Garrigues, Esq., then and there being a justice of the peace in and for the said county, by the consideration and judgment of the said Edward, so being, &c., recovered against a certain Jacob Rhoads, the sum of $37.08 and costs of suit, which said sum, &c. And the said judgment being in full force and remaining unpaid and unsatisfied, he the said Elijah, on the 17th day of October, in the year last aforesaid, sued and prosecuted before the said Edward, so being, &c., a certain writ called an execution, directed &c., by which said writ the said constable was commanded, &c. (setting out the execution in form), which said writ, as endorsed afterwards, to wit, &c., was delivered to the said John Hampton, who then and from thence, until, &c., was constable of the township of Charlestown, to be executed in due form of law, by virtue of which said writ, the said John Hampton, so being constable, &c., afterwards, to wit, &c., seized and took in execution divers goods and chattels of the said Jacob, of great value, to wit, of the value, &c., and then and there levied the same thereout, and by sale of the goods and chattels aforesaid, then and there made and received a large sum of money, to wit, the sum of $41.29, over and above all costs, and the said defendant avers that the said goods and chattels, at the time they were seized and taken as aforesaid, were lying and being in and upon a certain messuage and lot of land, situate in the said township of Tredyffrin, and heretofore let and demised by the said Isaac to the said Jacob, and of which said messuage the said Jacob was then and there possessed, and the said Isaac further avers that there was then and there, at the time of the seizing and taking of the said goods and chattels of the said Jacob by the said John, constable as aforesaid, due and payable from the said Jacob to the said Isaac for rent for the said messuage and lot of land, a large sum of money, to wit, the sum of $47.50, of which the said John, constable as aforesaid, then and there and before the return of the said writ, had notice, by means whereof the said plaintiff became liable to pay to the said defendant in the same suit, the aforesaid large sum of money, to wit, the sum of $41.29, which said large sum of money was at the time of the commencement of this suit, and still is due and owing from the plaintiff to the said defendant, (with the usual formal conclusion).

Another special plea, setting out more particularly and minutely, but intending to exhibit substantially the same defence, was also filed.

To these pleas, several replications were filed putting the matters therein alleged in issue.

The plaintiff proved by Amos R. Rapp that he (the witness) cried the sale on the 25th of October 1839, for Hampton, and

[Coffman v. Hampton.]

Coffman bought the articles stated in the declaration. After the sale, Hampton asked Coffman to meet him at 8 or 9 o'clock next day to settle up. Coffman said he had not any money with him, and would meet him next morning to settle the bill. They were sold as the goods of Rhoads, under an execution at the suit of Steward. The claim before the justice was for keeping the hogs between the first and second sale, and moving the goods from Rhoads's to King's. Other witnesses proved the same, and also that the plaintiff paid King $2 for keeping the hogs; that there was a second sale, where the articles brought more than at the first sale. Coffman requested Hampton to pay over money which he claimed out of the sale as landlord of the premises for rent due. The conditions of sale were, that any person or persons purchasing any article or articles, should pay cash before the removal of the goods. The vendue list was as follows:

| | | |
|---|---|---|
| Five-pronged fork, - - - | Dr. Coffman, - - - - | .16 |
| Dung-fork, - - - - - | Elijah Steward, - - - | .10 |
| Hoe, - - - - - - - - | - Ditto, - - - - - | .10 |
| Dung-fork, - - - - - - | - - Ditto, - - - - - | .03 |
| Grindstone, - - - - - | Dr. Coffman, - - - - | .75 |
| Wheelbarrow, - - - - | Elijah Steward, - - - | .30 |
| Wheelbarrow,—Sideboard, | Dr. Coffman, - - - - | 1.75 |
| Shoats, 1st choice, - - - | Dr. Coffman, - - - - | 5.00 |
| 2d choice, - - - | Ditto, - - - - - | 5.05 |
| 3d choice, - - - | Ditto, - - - - - | 4.85 |
| 4th choice, - - - | Ditto, - - - - - | 4.85 |
| 5th choice, - - - | William P. - - - - - | 4.35 |
| 6th choice, - - - | Ditto, - - - - - | 4.30 |
| Corn in the shock, - - - | Dr. Coffman, - - - - | 12.50 |
| | | 43.84 |

The defendant called—

Edward Garrigues affirmed. (Being shown a docket.) "This is my docket; and these are my entries in the Steward *v.* Rhoads, and this is the record of the suit of John Hampton, constable, against Dr Coffman."

The defendant then proposed to ask the witness as follows: "Please to state what the cause of action was before you in the case of Hampton against Coffman." To which question the plaintiff objected. Whereupon the court called for the docket, and, on inspection, finding that the cause of action was therein set forth as in the transcript of the proceedings before the justice, overruled the question, and the defendant excepted.

The defendant then requested the witness to state, whether the docket set forth precisely the cause of action, and whether the cause of action was or was not for the costs of the second sale. The plaintiff objected to the witness proceeding so to state; the

[Coffman v. Hampton.]

court sustained the objection and overruled the question, and the defendant excepted.

The defendant then gave evidence of his title, and that rent was coming to him from Rhoads, of which notice was given to the constable, Hampton, before the return of the execution. He further proved that on the day of the second sale he tendered a sum amounting to all Hampton's demand, except the costs incurred in moving the goods between the first and second sale.

The defendant requested the charge of the court upon the following points:

1. The claim of the plaintiff, as set out in his declaration, is not as an officer, but exists, if at all, in his individual right, and is not sustained by any proof.

2. The contract was not complete at the time of the suit being commenced, as the defendant, according to the evidence, was entitled to his choice of several of the articles sold, and he was not called on to make that choice, nor did he ever refuse to make it.

3. Unless the contract was complete, no damage could be sustained for the breach of it.

4. As by the conditions of sale no time was fixed for the delivery of the articles, the removal of the goods, or the payment of the price, it is necessary to the plaintiff's right of action that he should prove a delivery or a tender of it, or at least a demand of the price; and there is no evidence in this case of any delivery or offer to deliver, or of a demand of the price.

5. The contract of the parties is not proved as stated in the declaration, the conditions of sale being essentially different from those alleged; and the several purchases at the sale by the defendant being declared on as one, instead of distinct contracts.

6. The tender of the money for which the goods were sold before the goods were delivered, or offered to be delivered, or the price of them demanded, is a full answer to the plaintiff's declaration, the breaches laid being—

1. That the defendant did not nor would take and carry away the said goods or pay the said purchase money for the same.

2. That he has not fulfilled his promise to pay their reasonable value.

7. The plaintiff has alleged no special damage, and can recover none without declaring specially.

8. The question as to the right of set-off does not arise, the claim of the defendant having been put in issue by the plaintiff's replication.

The plaintiff requested the court to charge the jury on the following points:

1. The defendant cannot in this action avail himself, either by way of set-off or as an equitable defence, of any of the facts set out in his special plea.

2. He cannot set off his claim against Rhoads for rent in this

[Coffman v. Hampton.]

action, which is a special assumpsit, brought by the constable to recover damages for non-performance by the defendant of his contract in purchasing the goods.

The court charged the jury as follows:

This is an action of assumpsit, in which the plaintiff declares in three counts; the first a special count, setting out a contract of sale of certain goods, and breach by the defendant, which will be more fully noticed hereafter; the second, an *indebitatus assumpsit* for goods sold and delivered; and the third, *quantum valebant* on goods sold and delivered. There is no evidence to support the last two counts. All the testimony adduced by the plaintiff is applicable to the first count, and if he is entitled to recover at all, it must be on his cause of action as set out in that count. The object of the action is to recover damages sustained by the plaintiff in consequence of the refusal of the defendant to perform his contract.

It appears that the defendant attended a sale made by the plaintiff, as constable, of certain goods taken by him in execution, and purchased the articles mentioned in the first count. Those articles were sold on certain conditions, one of which was that the purchaser should pay the cash before the removal of the goods. In pursuance of this condition, the defendant not being prepared to pay for the goods purchased, the articles remained in possession of the plaintiff, under an arrangement made by the parties to meet the next morning at the house of Edward Garrigues, Esq., for the purpose of settlement, that is, as I understand it, to receive the money on the one side, and possession of goods on the other. This arrangement does not appear to have been carried into effect, and the articles consequently remained in possession of the plaintiff; until subsequently sold by him for a larger price than the defendant bid for them at the first sale.

When a contract for the sale of chattels is made, and either party disaffirms it by refusing to perform his part, an action lies for the other to recover damages for this refusal. But before either can sustain such an action, where by the contract the acts to be performed are mutual and concurrent, to be performed at the same time, he must show that he has complied with, or tendered to comply with his part of the agreement. Where no time is fixed by the terms of the contract for the delivery of the articles, and the payment of the price, at law a reasonable time is allowed, and either party complying, or offering to comply within that time, is entitled to his action. If the purchaser pays, or tenders to pay, he may recover damages if the vendor refuses to deliver. So, if the vendor delivers or gives notice of his readiness to deliver, and the vendee refuses or neglects to pay or receive, an action lies for the seller. But this is a condition precedent without the performance of which no right of action vests. I think, therefore, it was incumbent on the plaintiff to tender,

[Coffman v. Hampton.]

or, at least, give notice of his readiness to deliver. But there is evidence for the consideration of the jury, that there was such tender or notice of readiness. Such an offer may be collected from the testimony of Amos R. Rapp. If the jury believe that on the request of the defendant the goods were not immediately delivered, but the parties agreed to meet for that purpose, there was a sufficient offer, or notice of readiness to deliver, to satisfy this rule.

The plaintiff, then, alleging he has done all that was incumbent on him to do, and that the defendant has neglected to perform his part, says, he is entitled to damages. But while a performance, or an offer to perform, is sufficient to found an action, so performance, or an offer to perform, is sufficient to defend against such action. If the vendee, within a reasonable time, and before the contract was put an end to by a disaffirmance by him, offer to pay for and receive the goods, this would be a sufficient answer in a suit brought to recover damages for refusing to pay and accept. In the present case the plaintiff assigns as breaches, that the defendant, not regarding his promise and undertaking, did not nor would, although often requested, take or carry away the said goods, or pay the said purchase money for the same, but hath hitherto neglected and refused so to do. This is the gist of the action. It is for this damages are brought. But there is evidence for the jury that the defendant offered to comply, and if the jury believe this was done before refusal or neglect by him, the plaintiff is answered. It is true he tendered nothing more than the price of the goods, and that the constable claimed to be entitled to a sum for costs and expenses. But in this action nothing is demanded for keeping the pigs, and moving them and the other property. The declaration is for refusing to accept and pay. The defendant says, I did not so refuse. If the plaintiff claimed damages for any thing else, he should have set out specially all the facts on which he relied in his declaration, or perhaps after accepting the price and delivering the goods, he might have been entitled to an action for special damages. Be that as it may, the plaintiff proceeds, as I have already said, on the refusal of the defendant, and this is the only question submitted to the jury.

If the jury should believe there was no such offer by the defendant, the plaintiff has a good cause of action to be compensated by such damages as he can show he has sustained. The usual standard of damages in such cases where there has been a re-sale, as here, is the difference between the price first bid and that for which the goods eventually sold. This is, perhaps, the safest measure, but the jury may adopt another if they can find one. In this case, it appears the goods in question sold at the second sale for a larger amount than the defendant bid for them; nothing was, therefore, lost in the price of the goods, and so the second sale furnishes no standard of admeasurement. Evidence

[Coffman v. Hampton.]

has been given without objection, that in consequence of the defendant's breach of contract the plaintiff was put to costs and expenses in taking care of and supporting the property. It is shown that he has paid $2 to Mr King for this purpose. I do not recollect any other costs and expenses. But the defendant answers, that even admitting all the plaintiff says to be true, he claims—

1st. That the plaintiff is indebted to him for money had and received in a larger amount than any damages suffered, which he offers to set-off.

2d. A special plea of set-off, setting out the proceedings before the justice, execution, sale, and rent due, whereby the plaintiff became liable to pay to the defendant $47.50, &c.

There is no proof to support the plea of set-off first pleaded; and it is not insisted on. Under the pleadings in this case, evidence has been received to show that at the time of the sale under the execution, there was due to the defendant from a certain Jacob Rhoads, his tenant, for rent of the premises where the levy was made, the sum of $47.50, and that before the return of the execution notice was duly given to the constable of this fact, and a demand of payment preferred; and upon this evidence the defendant insists he has a right to have the rent thus due allowed by way of set-off in this action, or at least so much of it as the plaintiff had funds arising from the constable's sale wherewith to pay. I cannot assent to this. Admitting, for the sake of the argument, that the defendant, as landlord, was entitled to be paid out of the proceeds of sale in the hands of the plaintiff as constable, one year's rent, and to be preferred to the execution-creditor, it does not follow that in an action by the constable to recover unliquidated damages for a breach of contract of sale, as in the case at bar, a landlord defendant has a right to set-off the amount of such rent as a debt due from the plaintiff. It is a well-settled principle that debts, claims or demands which may be set-off, must be due in the same right; that is, due to and from the parties in the same character. So far has our Supreme Court carried this principle, that in an action brought by an administrator for a debt due to himself for goods of the intestate sold by him to the defendant, the defendant cannot set-off a debt due to him from the estate of the plaintiff's intestate. Now in what character does the plaintiff sue here? The moment he levied on the goods, he acquired such a property in them as would have entitled him to sustain trespass or trover against any person carrying them away. He has, too, such an individual interest in all contracts of sale made with him in respect to them, and in the proceeds of such sale, as to enable him to bring actions in his own name to recover such proceeds, for the enforcement or vindication of such contracts, and to recover damages for the breach of them. Like an administrator, his interest is a personal interest, and may and

[Coffman v. Hampton.]

ought to be vindicated by private or personal suit: this is what has been done here. The action is, as I conceive, in his private capacity. The naming him as constable is surplusage. Does the defendant claim that in this capacity he is indebted to him? No such claim is made. But it may be said that from the moment he received the money, or at least after notice of rent being due, he became liable to pay to the defendant the amount of such rent. If this be so, he can only be liable as an officer of the law. It can not be pretended that the mere fact of his receiving money under the execution against Rhoads operated to transfer the onus of Rhoads's debt to the plaintiff—to make the latter the personal debtor of the defendant, and subject him to all the penalties of such relation? If, then, the defendant, under these facts, has any claim against the plaintiff, it must be against him as constable, and therefore not to be set-off in this action.

But again, statutes of set-off are intended for cases where a discount may be made without confusion or inconvenience, where the debt or duty is due from one man to another, without the intervention of conflicting and clashing claims and interests. If a set-off, such as is here set up, were admissible, the attempt to administer the law in such cases must result in confusion and consequent inconvenience. The fact of the rent being at all due may be disputed by the tenant or execution-creditor. The amount due may be the subject of controversy. Nay, there may be half-a-dozen claimants of the rent. Is the constable to decide and adjust all these conflicts, or is the court to be called on to do so under a plea of set-off? This might be to introduce into a single cause half-a-dozen issues between persons, strangers, it may be, to the original parties. This, it strikes me, would be such a departure from the simplicity proper to cases of set-off, that I think it inadmissible. It has been argued at the bar that this is a suit for unliquidated damages, and therefore, on this ground alone, the defendant's claim ought to be rejected. Upon this point it is unnecessary to express an opinion.

Although the plaintiff has taken issue on the defendant's last pleas of set-off, this does not conclude his legal right or preclude him from asserting that, under the facts proved, the defendant's claim ought not to be allowed; and for the reasons given you are so instructed.

As to the plaintiff's points, as already stated, the defendant cannot avail himself in this action of his said supposed right of set-off.

As to the points submitted by the defendant, I will consider them in order.

1. The claim of the plaintiff exists in his individual right; and under the principles laid down, there is some evidence to sustain it; that evidence it is for the jury to weigh and consider.

2. This point has been already considered, and it is not neces-

II.—49    2 H

[Coffman v. Hampton.]

sary here to repeat, except to say, that if you believe the testimony, the contract, under the principles clearly laid down, may be considered as complete before the suit was brought. The question is one of fact for the jury, and the point cannot, therefore, be affirmed.

3. This, as a naked principle of law, is affirmed.

4. This point has already been sufficiently answered in our general remarks, as regards the principle of law involved, and, as we have already said, there *is* evidence of an offer or *readiness to* deliver the articles purchased by the defendant; we cannot say there is no evidence.

5. The authorities exhibited by the defendant's counsel do indeed appear to show that the law, as established in the English courts, is as laid down in the point; but with all the deliberation which we have had time to bestow on the subject, we cannot persuade ourselves that such can be held to be the law in this state. We think that, although the purchases of the several articles already referred to were made by distinct and several bids at auction, yet, being all done on the same day, and at the same auction, the several purchases may all be considered as made by one contract, and be declared on as such. This point, therefore, is not affirmed.

6, 7, 8. These points have already been sufficiently answered.

Errors assigned:

1. The court erred in refusing to permit the justice, before whom the suit was originally brought, to testify what the plaintiff's cause of action was before him.

2. In refusing to permit the said justice to state whether his docket set forth precisely the cause of action, and whether the cause of action was or was not for the costs of the second sale.

3. In charging the jury that "the articles remained in possession of the plaintiff under an arrangement made by the parties to meet the next Monday at the house of Edward Garrigues for the purpose of settlement, that is, as I understand it, to receive the money on the one side, and possession of the goods on the other;" such inference or understanding being unwarranted by the evidence, and communicated in a way that was calculated to mislead the jury.

4. In charging the jury that an offer to deliver the goods purchased by the defendant, might be collected from the testimony of Amos R. Rapp.

5. In charging the jury that if they believed that, on the request of the defendant, the goods were not immediately delivered, but the parties agreed to meet for that purpose, there was a sufficient offer or notice of readiness to deliver, to satisfy the rule of law.

6. In charging the jury, that if the defendant offered to comply, before refusal or neglect by him, the plaintiff is answered; as they thereby left it to the jury to determine whether a neglect by the

[Coffman v. Hampton.]

defendant to offer to comply till the 5th of November, could justly subject him to damages.

7. The court, in their charge to the jury, submitted it as a question for their determination, whether there was any refusal on the part of the defendant to pay for the goods, although there was no evidence of such a refusal, and evidence uncontroverted and unquestioned was furnished by a tender of the price of the goods by the defendant, and a refusal to accept on the part of the plaintiff prior to the re-sale.

8. The court erred in charging the jury that, if they should believe there was no offer by the defendant to pay for the goods, the plaintiff had a good cause of action.

9. The charge of the court is confused, obscure, and unintelligible.

10. The court erred in their charge to the jury as to the standard of damages, and in leaving it to them to adopt any standard that might suit themselves.

11. In directing the attention of the jury to the costs and expenses of the plaintiff in taking care of and supporting the property, as a subject proper for their consideration in estimating the damages.

12. In instructing the jury that the defendant could not avail himself in this action of his supposed right of set-off, and that they should disregard the evidence offered in support of his pleas.

13. The court erred in their answer to the defendant's first point.

14. In their answer to the defendant's second point.

15. In their answer to the defendant's fourth point.

16. In their answer to the defendant's fifth point.

17. The court did not sufficiently answer the defendant's sixth and seventh points; and the answer, so far as it is given, is erroneous.

18. The court erred in their answer to the defendant's eighth point.

*Lewis,* for plaintiff in error.
*Darlington, contra.*

The opinion of the Court was delivered by

SERGEANT, J.—1st and 2d errors. The court, we think, were right in rejecting the parol evidence of the justice to prove what the plaintiff's cause of action was before him. The docket of the proceedings before the justice showed explicitly that the action was brought to recover a deficiency in a sale for account of a former purchaser. This was the best evidence; and parol evidence was not admissible to contradict or vary it. So also the court was right in refusing the evidence of the justice to show whether his docket set forth precisely the cause of action; for that

[Coffman v. Hampton.]

was to be judged of by the docket itself, and not by parol evidence. Also for the same reason whether the cause of action was or was not for the costs of the second sale. The case was before the court on appeal, and the plaintiff had a right to embrace in his claim whatever was within the scope of the demand on the justice's docket.

3. The third error objects to the inference by the court from the evidence, that an arrangement was made between the parties to meet next morning at the house of E. Garrigues, for the purpose of receiving the money on one side, and possession of the goods on the other. It is an inference, we think, fairly deducible from the evidence, as it is difficult to understand what other settlement could take place, considering the terms of sale were for cash, and that the defendant was not then prepared to pay it, but engaged to meet next morning and settle.

4, 5. Nor is there anything in the fourth and fifth errors, because Rapp's testimony leads to the conclusion, that at the settlement next morning, the plaintiff was to deliver the goods on the defendant's paying the cash. It is ordinarily the business of the purchaser at auction for cash, to pay the money and take away the goods; and the conditions of sale plainly imply that here; for by them the purchaser is to pay the cash before *removal* of the goods. If he does not show that he offered to do this, or that the plaintiff prevented it, it seems to me the purchaser is in default. If the plaintiff had the goods ready next morning, and the defendant failed to come and pay for them and take them away (and there is no evidence that he did), the defendant was in default, and without more is liable.

6. The effect of the defendant's offer to comply before refusal or neglect by him, is an abstract point not applicable to this case. There was no proof of the defendant's calling to pay the purchase money on the morning after the sale, according to his agreement, and therefore he was from that time in default. Whether he redeemed himself by the subsequent tender on the 5th of November, depends on another question, whether he then tendered enough to meet the claim of the plaintiff.

7. The averments in this error are in my opinion not supported by the facts. There is evidence of a refusal, or what is tantamount, a neglect to pay the cash, according to the terms of sale, either on the day of sale, or the next morning when the defendant was to meet and settle. As to the subsequent tender on the 5th of November, it appears to have been of the amount of the sale only; whereas, it ought to have also embraced the charges the plaintiff had been at in removing and taking care of the goods. The property could not be preserved by the plaintiff without some expense, as it partly consisted of pigs, and they must be fed. If the defendant was in default, by not paying according to the conditions of sale, and in consequence thereof, the plaintiff was

[Coffman v. Hampton.]

obliged to incur expense in taking care of the articles or removing them to a secure and proper place, the defendant is fairly chargeable with this expense. The tender on the 5th of November, therefore, was not sufficient, and the plaintiff was not bound to accept it, but had a right to go on to a re-sale. The goods, it appears, sold for more than they brought at the first. If that surplus was sufficient to cover the costs and charges the plaintiff had been at, the defendant would not be liable; whether it did, was a question of fact for the jury.

8. In this I perceive no error.

9, 10. The ninth I pass over, and for the present the tenth.

11. The costs and expenses of the plaintiff in taking care of and supporting the property, were a proper subject of consideration in estimating the damages, as I have before said.

12, 13. It is clear the defendant could not set-off in this action to recover damages for his failure to comply with his bid, a claim against the plaintiff for the amount of rent due to him as landlord, out of the proceeds of sale. These claims are in different rights; and besides, a constable cannot move in any sphere but that prescribed by the law, whose agent he is, and from which alone his authority is derived. In suing to recover the amount of the defendant's bid, he represents in some measure the plaintiff on whose execution he sold; and it is from his official station alone, that the relations between him and the defendant have arisen, whatever may be the name in which he sues. In a suit by the landlord against him, he could not be allowed to set-off the claim he had, for failing to comply with the bid, nor can the reverse be done. Public officers, on grounds of policy, and for the protection of suitors, are not allowed to mingle together the rights and claims in different proceedings at law, either by their own arrangements or by set-off. In *Irwin* v. *Workman*, (3 *Watts* 362), it was held that a sheriff, in an action for money in his hands, cannot set-off a note given by the plaintiff to his attorney in the execution, and assigned by the attorney to the sheriff. So in *Miles* v. *Richwine*, (2 *Rawle* 199), it is said, two constables cannot agree to set-off executions in their hands against each other, inasmuch as such an arrangement would substitute the officer for the defendant; and in *Minich* v. *Cozier*, (2 *Rawle* 113), it is said to be agreed that a defendant in a suit by administrators, is not permitted to set-off a debt due to himself from one of the administrators, altogether unconnected with the estate in right of which the suit is brought.

The specific answers of the court involve no other point except the second, which is the fourteenth error.

14. This is unsupported. The contract was complete when the defendant bid off the articles at auction, and became the purchaser according to the conditions of sale. His not performing it by selecting the pigs was his own default. He might have done it at the time of the sale, if he had prepared the cash, or the next

II. — 2 H *

[Coffman v. Hampton.]

morning when he agreed to meet and settle. He cannot allege his own neglect, as a reason why he should be exempted from responsibility.

The tenth and sixteenth errors remain.

10. On this subject the court seems to do no more than lay down the rule in *Girard* v. *Taggert*, (5 *Serg. & Rawle* 19), that a re-sale is the usual mode of ascertaining the value, but the jury are not bound by this mode of estimation if they can find another more agreeable to truth; a principle which has been recognised in subsequent cases. Though the language used by the court may at first sight appear dubious, yet, on examination, this, we think, is its fair interpretation.

16. As to this, we think the court below were correct. The point has been decided in *Mills* v. *Hunt*, (17 *Wend.* 336), in which the English cases were reviewed; and it was decided, that when the purchase is made at an auction sale of goods, at one and the same time, and from the same vendor, although the articles purchased are numerous, and are struck off separately at separate and distinct prices, the whole constitutes but one entire contract; and the prices of the different articles fixed on are but part and parcel of it. In the decision and reasoning of the Supreme Court of New York in this case, we concur, so far as respects the sales of personal property at auction; and it fully supports the opinion of the court below.

Judgment affirmed.