ADONIJAH WEBBER *versus* WENTWORTH DAVIS ET AL.

A sale without delivery is valid as against the vender, and the title will pass from the true owner, though the goods at the time of sale, are tortiously possessed by a third party.

Where one wrongfully disposes of, or inteferes with, the goods of another, it will constitute a conversion without a manual taking or removal.

REPORTED by APPLETON, J.

TROVER for the value of a mare.

The facts of the case appear in the opinion of the court.

*D. D. Stewart,* counsel for the plaintiff.

The plaintiff bought the mare of one of the defendants, and paid for her. The contract was a fair one, and such as the parties had the right to make. The *risk,* which the plaintiff must necessarily incur, of losing the money paid for the mare, was a fair set off against the deduction made by the defendant from her value. The defendant had searched for her, but could not find her. She had been stolen from him, and the chances were strong that he should never recover her. Under these circumstances he chose to take one third of her value in money. He thus saved himself from any further trouble and expense in endeavoring to find her, and from the risk of a total loss of the mare.

By the agreement, the property in the mare passed to the plaintiff. In *Courtland* v. *Morrison,* 32 Maine R., 190, the court hold that " The title will pass by a sale, without delivery from the true owner, though at the time of the sale the goods are in the tortious possession of a third person." The same doctrine is held in *Parsons* v. *Dickinson,* 11 Pick. R., 354; *Laufear* v. *Sumner,* 17 Mass. R., 113.

And a sale without delivery is always good as against the vendor. Same authorities. *Ludwig* v. *Fuller,* 17 Maine R., 162.

The testimony of Ephraim Jones shows that in June, 1852, Wentworth Davis, the same defendant, who had previously

sold the mare to the plaintiff, claimed her as his property, and offered to sell her to the witness, and threatened to send his son and take the mare away from the witness, if he did not buy her.

This was an unlawful assumption of control and dominion over her, in defiance of the right of the plaintiff.

The witness further testifies that John Davis, the other defendant, came to his house, in October, 1853; claimed the mare as agent for his father, Wentworth Davis; proposed to sell her, as such agent, and did sell her on October 24, 1853, to the witness, for the agreed sum of $60,00, and gave the witness an indemnity in writing against the title of the plaintiff.

This indemnity bears date October 24, 1853, and was given and signed by both defendants.

Here is abundant proof that both defendants exercised dominion over the mare, *in defiance* and *in exclusion* of the rights of the plaintiff. The sale was made by John Davis, acting as the agent of Wentworth Davis, October 24, 1853. It makes no difference that the money was not paid over until the spring following. The claim on the part of the defendants to the mare, and their assumption of the right to sell her, in defiance of the plaintiff, and the actual sale of her, took place on October 24, 1853. The written indemnity bearing that date, shows on its face a completed conversion of the property, and the defendants are estopped by it to deny any of the facts it recites.

If it is said in defence, that the case does not show that the defendants took *manual possession* of the mare, and therefore a *conversion* is not made out, the answer is, that such proof is not necessary.

In *Gibbs* v. *Chase*, 10 Mass. R., 128, the court say, "No actual force is necessary to be proved. He who interferes with my goods, and without my consent, undertakes to dispose of them as having the property, does it at his peril, to answer me the value in trespass or trover." In *Miller* v. *Baker*, 1 Met. R., 31, the court quote the foregoing sentence

approvingly, and add: "It is sufficient to maintain trespass, if the party exercises an authority over the goods, against the will and to the exclusion of the owner, by an unlawful intermeddling, though there be no manual taking or removal."

In *Bowlin* v. *Nash*, 10 Cush. R., 418, the court, quoting from Lord Holt's definition of conversion, hold that if the defendant "assumed upon himself the property and right of disposing of the plaintiff's goods," it is a conversion.

In *Fernald* v. *Chase*, 37 Maine R., 270, SHEPLEY, C. J., says, "It is not always necessary to prove that the defendant has had the actual possession of the property. The exercise of such a claim of right, or of dominion over it, as assumes that he is entitled to the possession, or to deprive the other party of it, is a conversion."

This suit was brought December 17, 1853, after the sale of the property by the defendants, October 24, previous, and according to these authorities, the action is maintainable.

*S. H. Blake,* counsel for the defendants.

1. I submit that the plaintiff had no title to the mare; first, because he never had any delivery; second, because he knew the mare was stolen in "February or March, 1852." Within a "week or two" the plaintiff is at Lunenburg, and sees her, and thus *knows where* the mare was then. A "month" after she was stolen he pays the $20,00 to Davis, having previously seen the mare at Lunenburg, knowing she had been stolen, and yet does not communicate this knowledge, when he undertakes to buy.

If Webber had no complicity with the stealing, he had that knowledge about it that would render his purchase of property, known by him to have been stolen, void.

2. There has been no conversion by either defendant. No demand and refusal, from which to infer a conversion, and if there had been, it would be of no avail, as the mare was out of the reach and jurisdiction of the defendants.

The mare is *now* and *always* has been, since April, 1852,

on the farm of Jones, at Lunenburg, Mass.   They have not taken *possession* of her, nor *interfered* to prevent Webber from taking possession of her at any time.

If the mare became Webber's by the paying the $20,00, under the circumstances, she is now Webber's, and he can now go and take her where he first found her, for she remains there, and Jones has no title to her, for the defendant had none to pass to him; and when Webber demands the mare of Jones, he may turn her out to him, or refuse, and thus be guilty of a conversion himself.

If the mare did not become Webber's, then he cannot, of course, maintain this action in *trover.*

Upon the point of conversion, several authorities may be cited by the plaintiff's attorney, for instance : 7 John. R., 254; 10 John. R., 172; *Murray* v. *Bailey, Shipwick* v. *Blanchard,* 67, 12, 298; *Reynolds* v. *Shater,* 5 Conea, 324. I think these are the strongest cases we can find.

But in all these, though no removal of the property in some of them, there was an assertion of title, with a threat to maintain it, the *thing being* present, and the *power* to maintain it at hand.

One was a distress for rent, a seizure of the goods by an officer, notice of claim, and a legal holding of the possession, until five months' rent and forty dollars' costs were paid.

Another, a seizure of the goods, and two soldiers placed over them, though no removal.

But in *Fernald* v. *Chase,* 37 Maine R., 289, as exhausting the subject estating the true doctrine.   Also, *Bubier* v. *Bubier,* 39 Maine R., 307; see 8 Vt. R., 33 and 110, and *Reysdale* v. *Williams,* 8 Met. R., 498; *Glover* v. *Reddich,* 11 Met. R., 582.

3.  There is no pretence of conversion by John Davis, the son, that I am aware of.

4.  And the only real pretence of a conversion by W. Davis, was *when* the bond was *executed,* and became a *bond* by delivery, and the $60,00 was paid.   But *that* was " in the spring or summer of 1854," which was *after* the date of the

writ. So the action fails, if rested on this ground. *Storm* v. *Livingston*, 6 John. R., 44.

GOODENOW, J. This is an action of trover, to recover the value of a mare which Wentworth Davis, one of the defendants, formerly owned, and which, it is supposed, was stolen from him in February or March, 1852. The writ is dated December 17, 1853. Davis made search for the mare, after she was stolen, but could not find her. About one month after she was stolen, the plaintiff and the said Wentworth Davis met, and the plaintiff offered him $20,00 for the mare, and to run his own risk as to finding her. By the proposition, if the plaintiff found the mare she was to be his property, if not, he lost the $20,00, and had no claim on Davis to recover it back. The mare was worth $60,00. The proposition was accepted, and the plaintiff paid said W. Davis the $20,00.

Within two or three weeks afterwards the plaintiff found said mare in the possession of one Ephraim Jones, in Massachusetts. Before he could succeed in getting her from Jones, the said W. Davis claimed her as his, but he did not before the commencement of this suit, offer to rescind the contract with the plaintiff, or pay back the $20,00.

The deposition of said Ephraim Jones makes a part of the case.

The title will pass by a sale without delivery from the true owner, though at the time of the sale the goods are in the tortious possession of a third person. *Courtland* v. *Morrison*, 32 Maine R., 190. And a sale without delivery is valid as against the vendor.

By the admitted facts in the case, we are of opinion that the property of the mare was in the plaintiff, at the time he found her in the possession of the said Ephraim Jones.

Has there since that time, and before the commencement of this action, been a *conversion* of the same by the defendants, or either of them? A demand and refusal are only evidence of a conversion. When there has been an actual con-

version, and it can be proved, no demand is necessary before commencing a suit. It is not every interference with the property of another which constitutes a conversion. One person may remove the property of another person from one place to another place, without being guilty of a conversion of it to his own use. He may do it, without asserting any claim to it, for the benefit of the owner, and admitting his title to it.

· But if one person interferes with the goods of another, and without his consent undertakes to dispose of them as having the property, he does it at his peril; and there need be no manual taking or removal in order to constitute a conversion. It is sufficient if he exercises an authority over the goods against the will and to the exclusion of the owner, by an unlawful intermeddling with them, or assumes upon himself the property and right of disposing of them. This is abundantly established by the authorities cited by the counsel for the plaintiff. *Gibbs* v. *Chase*, 10 Mass. R., 128; *Miller* v. *Baker*, 1 Met. R., 31; *Bowlin* v. *Nash*, 10 Cush. R., 418; *Fernald* v. *Chase*, 37 Maine R., 290.

By the deposition of Jones, it appears that John Davis, as the agent of his father, did sell the mare in question to said Jones, for the sum of $60,00, on the 24th of October, 1853, which was before this action was commenced. And it is fairly to be inferred that he signed the obligation at that time, which is annexed to said deposition. The obligation speaks of the mare as having been "supposed to have been stolen from *us* about the winter of 1851–2." It admits that they both received the $60,00, paid by Jones for the mare, and both promised to indemnify Jones against the claim of any other person on said mare. Jones says the obligation was procured by him, and was handed to John Davis, when he was at the house of the witness, in October, 1853, to take down to his father, to be signed by him, and to be brought back in the spring or summer of 1854, when he paid for the mare; and it was taken by John, because the witness wanted Wentworth Davis' name to the instrument. But whether

signed by John Davis at that time or subsequently, it is proved to have been in his hands in October, 1853; it is to be presumed that he then knew the contents of it; and it is evidence of what he then undertook to do in relation to the property in said mare, although it might have been signed by him subsequently, and at the same time it was signed by his father.

We find no foundation in the facts reported in the case, for the argument of the defendant's counsel, that the sale of the mare from W. Davis to the plaintiff was fraudulent and void, on account of a fraudulent suppression of facts known to the plaintiff and not known to W. Davis. The case states as a fact, that after said sale was made, and the $20,00 paid by the plaintiff to said W. Davis, " within two or three weeks afterwards the plaintiff *found the mare* in the possession of one Ephraim Jones, in Massachusetts." There is no evidence that the plaintiff had any knowledge that the mare could be found at that place or any other, when he purchased the mare of W. Davis.

By agreement of the parties, the case having been submitted to the court upon the facts and evidence reported, with authority to draw such inferences as a jury might, and to enter judgment according to the law of the case, we have arrived at the conclusion that the defendants must be defaulted, and judgment entered for the plaintiff, for the sum of $60,00 damages, and interest on the same from the date of the writ, with costs.