## HARVEY W. COOPER v. GEORGE W. NEWMAN.

### HENRY HOWARD v. HARVEY W. COOPER.

Where an officer, intending to attach certain oxen of one H., against whom he had a writ, went to the barn of H, where they were kept, and there having the oxen in his control, notified H, that he then attached them, and inventoried them, *held* that he had made a valid attachment of the oxen.

Where an officer, having attached cattle of a debtor, then allowed them to remain in the debtor's possession upon the understanding between himself and the debtor that the attachment should still subsist, *held* that the attachment was not thereby dissolved as against the debtor or any one having notice of these facts.

Where one is put upon enquiry he is to be charged with notice of all such facts as he would have learned by reasonable enquiry.

A purchase of a chattel from one who has no power to sell it, where the purchaser takes and retains possession of it, claiming it under the sale, is a conversion of the chattel.

Where a debtor owns two cows only and both are subject to a mortgage, his interest in one of them is exempt from attachment.

A debtor may maintain trover against an officer who attaches personal property of the debtor by law exempt from attachment; but if he has sustained no actual damage he can recover nominal damages only; and where the property so attached is subject to a mortgage, and, after the attachment, is, by direction of the attaching creditor, who has become the legal owner of the mortgage, duly sold by the officer upon the mortgage, and the proceeds of the sale, being less than the amount of the mortgage debt, are properly applied upon that debt, the sum for which the property was thus sold should go in mitigation of damages.

By agreement of parties the facts in these cases were found by the court, and the questions of law were reserved.

### HARVEY W. COOPER v. GEORGE W. NEWMAN.

THE first action was trover, for a yoke of oxen, and the writ was dated March 27, 1862.

The plaintiff, being a deputy sheriff, received for service a writ, *Andrew D. Towne* v. *Henry Howard*, dated Dec. 6, 1861, and made return thereon, that, on Dec. 7th, 1861, he attached two oxen as the property of Howard, subject to a mortgage to one Downing; that on Dec. 12th he demanded of Downing an account; that, Dec. 25, Downing stated the amount due that day to be $33.91; that, Dec. 26th, he paid $33.93 to the defendant who then claimed to be the owner of said mortgage. This return was true if the plaintiff attached the oxen.

On said 7th of December the plaintiff having said writ vs. Howard, went with Towne to the barn of Howard, made a schedule of personal property there, including the oxen, intended then, and claimed, to attach said property, and Howard so understanding it refused to get a receipter, and said they might remove the property, but finally consented that the oxen might remain there under attachment, but the plaintiff never took the oxen from the barn or from the actual personal possession of Howard, who used them as usual till Dec. 23, 1861. The plaintiff then rode one-fourth mile and made an agreement with one Bliss, who lived one-fourth mile from the barn, that Bliss should see to the property which the plaintiff claimed to have attached in the barn, should see that the cattle were fed if Howard did not feed them, should inform any other officer who might come to attach them that the plaintiff had attached

them, and should inform the plaintiff if anything happened to the property. The plaintiff gave Bliss a schedule of the property and understood that Bliss was to be a keeper of the property, and, in some indefinite sense, Bliss understood the same thing, although he refused to receipt for the property. After an hour or two Bliss went to the barn, and told Howard that the plaintiff had appointed him to look after the attached property for the plaintiff, and Howard at first refused to do anything about it, and told Bliss he might take the property away, but finally agreed to take care of the property, and Bliss went to the barn about every day to look after the property until Dec. 23, 1861, when Howard drove the oxen 3 miles to the defendant's barn and sold them to defendant, who kept them until the spring of 1863, when he sold them. When the defendant bought them he was aware of such facts, (which he learned Dec. 7th,) as would have caused a person of ordinary prudence to make further enquiries before buying the oxen, to ascertain whether they were then under attachment, and by such enquiry as a person of ordinary care would have made, he would have learned all the facts stated in this case. The plaintiff lived in Keene; the defendant lived in Gilsum 10 miles distant.

The defendant was present Dec. 25th, when Downing made out his account; the mortgage was then transferred to defendant, and he carried the account to Keene and delivered it to the plaintiff, the same day. The plaintiff asked if he had the oxen and the defendant replied that he had, but did not inform the plaintiff that he had any claim upon them except the Downing mortgage; and the plaintiff not knowing that defendant had any other claim, on the next day, Dec. 26th, went to defendant's house and paid him $33.93 and demanded the oxen which the defendant refused to give up, stating that he had some other claim upon them. Plaintiff then demanded the $33.93 which defendant refused to pay back except upon condition that plaintiff would relinquish his claim upon the oxen. The plaintiff returned to Keene and the next day the defendant tendered to him the $33.93, which the plaintiff refused to receive. April 1863, judgment was rendered for plaintiff in *Towne* v. *Howard*, for $115.51, which remains unsatisfied to the amount of $69.88. The oxen were worth $80, Dec. 26, 1861.


HENRY HOWARD *v.* HARVEY W. COOPER.


THE second action was trover for two cows. Howard, mentioned in the foregoing case, is the plaintiff; the plaintiff in that case is the defendant in this; the facts of that case are found in this case, so far as they are material. The plaintiff owned two cows. The defendant made return on said writ, *Towne* v. *Howard*, that, Dec. 7th, 1861, he attached said cows, one heifer, and a lot of hay in a certain barn, subject to a mortgage to Comstock; that, Dec. 12, 1861, he demanded of Comstock an account; that, such account not being given, he retained said property in his custody until Dec. 26, 1861, when Comstock gave him an

account under oath that $62.50 was due on the mortgage ; that, Jan. 2, 1862, he paid Comstock said $62.50.

Plaintiff, defendant, and Bliss did, agreed, and understood concerning the cows, precisely what they did, agreed, and understood concerning the oxen while the oxen remained in plaintiff's possession, until Jan. 2, 1862, when defendant paid Comstock, received Comstock's note and mortgage as agent of Towne, and as agent of Towne took the cows upon the mortgage and sold them, according to the statute providing for the foreclosure of mortgages, one for $20, and the other for $25.

The defendant made and annexed to the writ in favor of Towne a statement of his proceedings in the sale of the property upon the mortgage, which by agreement of the parties was referred to as part of the case.

*Wheeler & Faulkner,* for Cooper.

*Lane,* for Newman and Howard.

There was no valid attachment of the oxen ever perfected ; or if there was, there was no subsisting one at the time the defendant bought the oxen. *Dunklee* v. *Fales,* 5 N. H. 528 ; *Young* v. *Walker,* 12 N. H. 508.

There is no constructive possession of goods in an officer who has left them in the possession of the debtor. *Pillsbury* v. *Small,* 1 Appl. 435.

In sales of personal property there must be an open, visible, substantial change of possession as against everybody but the vendor. *Clark* v. *Morse,* 10 N. H. 236 ; *Tilton* v. *Fuller,* 29 N. H. 128.

When there is no fraud on the part of the purchaser, actual knowledge of the fraudulent intent of the vendor must be proved upon the vendee to avoid the sale. *Seavey* v. *Dearborn,* 19 N. H. 360 ; *Young* v. *Walker,* 12 N. H. 508.

A mortgage of the necessaries which are exempt from attachment, gives another creditor no additional claims upon such property ; nor can a mortgage of such property with other property, extend his attachable rights to the exempted property. He may attach the non-exempted property, pay the mortgage and secure himself any surplus there may be left. In this case the officer made a return of the sale of the exempted property, on the writ, as a part of his official acts.

A creditor, who attaches exempted property, cannot put himself in the double relation of attaching creditor and assignee of the mortgage, and thus sweep away the last remnant of the necessaries of life ; if he commences by attachment, he must take, hold, and justify by virtue of it, in his attempt to secure the avails of the property towards paying the debt in suit.

Without the attachment he has no right to the mortgage, and with the attachment he has no right to so connect the attachment and mortgage, as to secure the value of the exempted property or any part of it towards paying any other debt. Neither a fair application of the law nor public policy will allow it.

Suppose in this case, the cows, the heifer and the hay sold for just enough, or even for not enough, to pay the mortgage debt and costs of sale, then the debtor's property has been wrongfully sacrificed, he and his family deprived of its use and benefit, and the creditor has gained nothing towards paying his debt.

Suppose, again, one of the cows, the heifer and the hay sold for just enough to pay the mortgage debt and costs of sale, then the creditor would receive the value of the last cow towards satisfying his debt, and would take indirectly what he could not take directly.

BARTLETT, J.   The facts stated in *Cooper* v. *Newman* show a valid attachment of the oxen by the plaintiff, *Huntingdon* v. *Blaisdell*, 2 N. H. 317; and it is not material here whether the plaintiff retained actual possession of them through Bliss, for if he allowed the oxen to remain in the possession of Howard, it was upon the understanding of both that the attachment was still to subsist, and therefore the attachment would not be defeated by the fact that possession was not retained by the plaintiff, as against Howard or any one having notice that the attachment had been made and was still subsisting.   *Houston* v. *Blake*, 43 N. H. 116; *Treadwell* v. *Brown*, 43 N. H. 292.   As the defendant at the time of the purchase was put upon enquiry whether the oxen were then under attachment, he is to be charged with notice of all such facts as he would have learned by reasonable enquiry, *Nute* v. *Nute*, 41 N. H. 69; *Patten* v. *Moore*, 32 N. H. 384; *Warren* v. *Swett*, 31 N. H. 342; and by such enquiry he would have learned not merely that the oxen had been attached, but that it was the understanding between the plaintiff and Howard that the oxen remained, as they did, subject to the attachment, that Bliss was acting as keeper of them for the plaintiff, and that the attachment was still subsisting.   *Young* v. *Walker*, 12 N. H. 508; *Chadbourne* v. *Sumner*, 16 N. H. 132; *Carpenter* v. *Cummings*, 40 N. H. 171.   The defendant purchased the oxen of Howard, who, as against this attachment, had no right to sell them, and took possession of and held them as his own, and as the attachment was valid as against the defendant, this was a conversion, *Hyde* v. *Noble*, 13 N. H. 499, *Clark* v. *Rideout*, 39 N. H. 238, *Burnside* v. *Twitchell*, 43 N. H. 392, for which the plaintiff may maintain this action and recover in the present case the value of the oxen with interest.   *Whitney* v. *Farwell*, 10 N. H. 13; R. S. ch. 194, sec. 5.   There must in this case be judgment for the plaintiff for $80 and interest from Dec. 23, 1861.

Upon the facts stated in *Howard* v. *Cooper*, the defendant had the right to attach one cow only, *Greenleaf* v. *Sanborn*, 44 N. H. 17, R. S. ch. 184, sec. 2; and his attachment of the other cow being wrongful, he is liable in this action: *Walcott* v. *Keith*, 22 N. H. 206; *Summersett* v. *Jarvis*, 3 B. & B. 2; *Woodbury* v. *Long*, 8 Pick. 543; *Blanchard* v. *Coolidge*, 22 Pick. 156; *Webber* v. *Davis*, 44 Me. 152; 2 Gr. Ev. sec. 642; 2 Hill on Torts, 244; but as the property taken was soon after lawfully held and sold under the mortgage made by the plaintiff, which had regularly come into the hands of the defendant as

agent for Towne, *Whittemore* v. *Gibbs*, 24 N. H. 488, R. S. ch. 132, secs. 13, 16, Id. ch. 184, sec. 15, (see *Hinds* v. *Ballou*, 44 N. H. 619 ; 2 Hill, note 294,) and the proceeds of the sale went properly towards the payment of the mortgage debt of the plaintiff, R. S. ch. 132, sec. 16, the sum for which it sold should go in mitigation of damages. *Pierce* v. *Benjamin*, 14 Pick. 361 ; *Felton* v. *Fuller*, 35 N. H. 229 ; 2 Gr. Ev. sec. 276.    As the sum, for which both cows were sold, was considerably less than the mortgage debt, we need not examine the last question suggested by the plaintiff's counsel.    There is no evidence of the value of the cows other than this sale, or of any actual damage to the plaintiff, and the interest on the value of either cow from the date of the conversion to the time, when Towne's mortgage title accrued, would be no more than nominal damages.    There must be judgment for the plaintiff for nominal damages.