Messer v. Woodman.

# MESSER *v.* WOODMAN.

*Indebitatus assumpsit*, for goods sold and delivered, will not lie, when there has not been either an actual delivery of the goods, or, what in point of law, amounts to a delivery.

The general rule is, that so long as, according to the terms of the sale, any thing remains to be done between the parties, to ascertain the quantity or price of the goods sold, or to distinguish the goods sold from others, the sale and delivery will not be complete.

And a mere offer by the seller, to deliver, upon the condition of payment or security of the agreed price, and a refusal by the buyer to accept the goods, will not amount in law to a delivery.

Where M. purchased of T. and became the owner of a quantity of hay, then in the barn of T., a part of which was in the bay, and the residue upon the scaffold, and T. afterwards sold the barn to W., who went into possession of it, and claimed the hay also, in virtue of the purchase: and M. afterwards caused the hay to be sold by auction, and a portion of that which was in the bay was sold to W., and another portion to one P., at a certain price per ton, and also the entire quantity upon the scaffold was sold to W., at a specified price, and no division of the hay in the bay was ever made; and after the hay was bid off by W., he was requested by M. to attend to the weighing of the hay, and to remove his part, so that P. could get his portion, and to pay or secure the payment of the price of it, and W. refused, saying that he owned the hay, and should move it when he got ready, and would not give security for hay which he owned: — it was *held*, that this constituted no sufficient delivery and acceptance of any part of the hay sold, and that *indebitatus assumpsit* would not lie, to recover the price of it.

Whether, when separate parcels of goods are put up separately for sale by auction, and are struck off separately, and at each time the name of the purchaser is set down, the sale of each parcel will constitute a distinct and separate contract of sale, *quœre?*

ASSUMPSIT. The writ was dated February 17, 1848. The declaration contained two counts; one, on an account annexed, for a quantity of hay amounting to $47.62, and the other, a general count, for a quantity of hay sold and delivered to the defendant.

It appeared in evidence, that one Jason Thayer owned a farm in Danbury, and sold the hay in a barn on the farm, to one Cashman, and Cashman sold it to the plaintiff. After Cashman sold the hay to the plaintiff, the defendant bought the barn of Thayer, and moved upon the premises. He also bought of Thayer, the personal property on the farm belonging to Thayer, and claimed the hay as belonging to Thayer; but it appeared in evidence that the hay was not sold to the defendant by Thayer, but was reserved. The hay, however, had never been moved.

After the purchase of the barn by the defendant, the plaintiff advertised and sold the hay by auction. On the day of the auction, before the sale, and at the time of the sale, the defendant forbade the sale of the hay, and claimed it as his. He said he had it of Thayer, and bought it with the barn. The hay was set up and sold by auction, and a portion of it was struck off to the defendant. One John H. Emmons was requested by the

15 *

plaintiff to be present at the auction, and keep a minute of the sales. This he did, and made a memorandum in writing, at the time, of the quantity struck off to the purchasers, and the price of the several parcels sold.

The memorandum was as follows : —

" Sale of hay at the Perigo Barn. — One ton off of the

| | |
|---|---|
| .top of the bay, to Levi T. Woodman, | $6.00 |
| All the hay on the scaffold to Levi T. Woodman, | 10.00 |
| One ton in the bay, to John Pettis, | 5.75 |
| One ton in the bay, to Levi T. Woodman, | 5.14 |
| One ton in the bay, to Levi T. Woodman, | 8.00 |

The remainder in the bay, by the ton, to Levi T. Woodman,                                       6.16 "

After the sale, the plaintiff asked the defendant to attend to the weighing of the hay, and to move his; so that Pettis could get his part.

The defendant said the hay was his, and in his barn, and he should move it when he got ready. The plaintiff then asked the defendant to pay or give security for the hay. He said he should not give security for his own property.

It appeared that the hay had never been weighed or moved, but remained as it was when sold in the barn, which was in the defendant's possession and under his control till it was burned, with the barn, in April, 1849.

Upon this evidence the defendant moved for a nonsuit, on the ground that, upon this state of facts, the sale had never been perfected; that no legal delivery of the hay had been made, and no recovery could be had in this form of action; and that the sale was void under the statute of frauds.

The Court overruled the motion, and a verdict was taken by consent for the plaintiff, for $47.62, on which judgment was to be entered, or the verdict to be set aside and a new trial granted, as the opinion of this Court should be upon the case.

*Kittredge*, for the defendant. Here was no acceptance of the hay, and therefore no delivery in fact, but a refusal to accept a delivery. As to the hay in the bay, there was no separation of

the defendant's part of it from Pettis's hay. *Davis* v. *Hill*, 3 N. H. Rep. 382, is conclusive on this point of the necessity of such a separation. *McDonald* v. *Hewitt*, 15 Johns. 349, cited in *Davis* v. *Hill*, shows that no property passed in the hay.

We suppose the party must assent to the completion of the sale. Here was an offer, on the part of Messer, to deliver. On the part of Woodman, there was a refusal to perfect the contract. He set up a title, independent of Messer, and refused to receive the possession of the hay from Messer.

The barn was in the defendant's possession before, as well as after, the sale. The hay was not in his control or possession. Woodman had no more possession of the hay after, than before the sale.

If there was no delivery, then no recovery can be had. The Statute of Frauds interferes.

*Pike*, for the plaintiff. The sale was not void by the Statute of Frauds; because, in the first place, there was a sufficient memorandum, and in the second place, there was an actual delivery and acceptance. The auctioneer may be, and is the agent of both parties; his signature binds both. *Chitty* on Contracts, 402; *Emmerson* v. *Heelis*, 2 Taunt. 38. Here the clerk of the auctioneer had authority. 2 Stark. Ev. 606, 607, note. The memorandum need not be signed by both. It is sufficient if signed by the party to be charged. 14 Johns. 487; 13 Mass. Rep. 87; 2 Kent Com. 510, 511; *Sherburne* v. *Shaw*, 1 N. H. Rep. 157.

It is contended by the defendant's counsel that here was no delivery. His forbidding the sale cannot affect the contract. A portion of the hay was struck off by the lump. As to the residue, the plaintiff had done all he could do. The hay was in the defendant's possession, and that was enough.

The defendant used language of acceptance, and not of refusal. The plaintiff's offer to deliver the hay is equivalent to a delivery. The property was in the possession of the defendant. 10 Bing. 384; 4 Pick. 196.

*Kittredge*, in reply. It was neither the auctioneer nor his clerk that made the memorandum. The memorandum was insufficient at all events. It must be signed by the party to be charged by the contract. The seller must be bound, as well as the buyer. Emmons, who made the memorandum was requested by the plaintiff only, to do it.

WOODS, J. The two counts embraced in the declaration, are substantially the same. They are both for goods sold and delivered, in different recognized forms of declaring. The action is not brought to recover damages for the non-performance of the contract of sale. If it were so, perhaps, the effect of the Statute of Frauds upon the contract might become a material matter of inquiry. It would become, in that case, perhaps, material to determine, whether a sale in separate lots, and constituting separate contracts of sale of each lot is shown by the case, or, whether the sale of the several parcels of hay is to be regarded as one sale of all the parcels. If the former view would be proper to be taken, perhaps the operation of the statute would be avoided, while if the latter is the true view of the transaction, the validity of the sale might be directly affected by the provisions of the statute, if no delivery were shown, since the value of the several parcels, in the aggregate, is found by the verdict to be greater than $33. And so, although the value was uncertain at the time of the sale. Chitty on Contracts 389; *Watts* v. *Friend*, 10 Barn. & Cress. 448.

In the case of the sale of goods by auction, if several lots be put up separately, and separately struck off to the same purchaser, and on each occasion the auctioneer write down the name of the vendee, there is, in point of law, a distinct and independent contract, as to each lot, although the purchaser afterwards sign one memorandum that he has bought the several lots. *Roots* v. *Lord Dormer*, 4 Barn. & Adol. 77. A similar doctrine would seem to prevail where an estate is sold by auction in separate lots, and the same person becomes the purchaser of the several lots. In such case, the better opinion, and that supported by the greater weight of authority, would seem to be, that

a distinct contract is created, as to each parcel, and not one entire contract as to the whole. *Emmerson* v. *Heelis*, 2 Taunt. 38 ; *Johnson* v. *Johnson*, 3 Bos. & Pull. 169 ; *James* v. *Shore*, 1 Stark. 430 ; Chitty on Contracts, 298, and cases there cited. In the case of *James* v. *Shore*, the plaintiff having consolidated the two contracts, and declared on them as one, was nonsuited at the trial.

It might also become material, in the case supposed, to consider the sufficiency of the memorandum of sale. But the decision of the points referred to is not material in the determination of the case at bar, and we therefore forbear their further consideration.

It cannot be doubted, that, if a delivery of the hay be shown, the action may well be maintained ; but if there be no sufficient delivery, or what is equivalent to a delivery, there can be no recovery of the price of the hay. Chitty on Contracts, 394 ; *Simmons* v. *Swift*, 5 Barn. & Cress. 857 ; Noyes's Maxims, 88. In the event of a delivery shown, it could make no difference whether the sale of the several parcels constituted one entire contract, or several distinct contracts, or whether the value of the goods sold was greater or less than $33.

The great, and the only material question, then, to be determined here, is, whether the hay was, in point of law, delivered to the defendant ; or whether it was so in his possession at the time of the sale, that its condition, together with the acts of the plaintiff and defendant, were equivalent to a delivery of the hay to, and an acceptance of the same by, the defendant.

It is laid down in Saunders on Pl. & Ev., that to support an action for goods sold and delivered, it must be proved not only that the property in the goods vested in the defendant, but also that they were actually or virtually delivered, and that the plaintiff must show that he has divested himself of all lien upon the goods, and that the defendant might maintain trover for them, without paying or offering to pay for them. Saund. Pl. & Ev. 536.

In *Goodall* v. *Shelton*, 2 H. Black. 316, the facts were, that the plaintiff had agreed to sell a quantity of wool to the defend-

ant ; that a shilling, earnest money, was paid on the part of the defendant to bind the bargain ; that the wool was packed in cloths, furnished by the defendant for that purpose, and left at a house ·belonging to the plaintiff, and that the defendant was to send his wagon in a few days and take it away. But, while the defendant's servant was weighing and packing it, and proposing to the plaintiff to fix the time when the wagon should come, the plaintiff declared that " it should not go off his premises till he had the money for it." The plaintiff brought an action for goods sold and delivered. *Buller*, J., said, " In general, in questions of this sort, the usage of the trade is resorted to, in order to show whether there has been a delivery or not. But here the evidence is, that the plaintiff peremptorily insisted on not parting with the goods till he was paid ; clearly, therefore, there was no delivery." *Rooke*, J., said, " I am of the same opinion. The plaintiff had a right over the goods at the time ; and if so, they were not delivered, for if they had been delivered, that right would have been in the defendant."

In *Simmons* v. *Swift*, 5 Barn. & Cress. 857, the case was thus : The owner of a stock of bark, entered into an agreement to sell it at a certain price per ton, and the purchaser agreed to take and pay for it on a day specified, and a part was afterwards weighed and delivered to the defendant. In an action for goods sold and delivered, it was held that the property in the residue did not vest in the purchaser until it had been weighed, that being necessary in order to ascertain the amount to be paid, and that even if it had vested, the seller could not, before that act had been done, maintain an action for goods sold and delivered.

*Bayley*, J., said, " I therefore, think, that the bark, which remained unweighed at the time of the loss, was at the risk of the seller ; and even if the property had vested in the defendant, I should have thought that it had not been delivered, and consequently, that the price could not have been recovered, on a count for goods sold and delivered."

In *Hanson* v. *Meyer*, 6 East. 614, it was decided that under a contract of sale, whereby the vendee agreed to purchase all

the starch of the vendor, then lying at the warehouse of a third person, at a fixed price per cwt., the weight of which was not then known, but was afterwards to be ascertained, and the vendor gave a note to the warehouse keeper, directing him to weigh and deliver his starch to the vendee, the absolute property in the goods did not vest in the vendee before the weighing, which was to precede the delivery, and to ascertain the price ; and that part of the starch having been weighed and delivered to the vendee, by his direction, the vendor might, notwithstanding such part delivery, upon the bankruptcy of the vendee, retain the remainder, which was still unweighed, in the warehouse, in the name, and at the expense of the vendor. Lord *Ellenborough*, C. J., remarked, in delivering the opinion of the Court : " By the terms of the bargain, formed by the broker of the bankrupts, on their behalf, two things in the nature of conditions, or preliminary acts, on their part, necessarily preceded the absolute vesting in them of the property contracted for. The first of these does so, according to the generally received rule of law in contracts of sale, namely : the payment of the agreed price, or consideration for the sale. The second, which is the act of weighing, does so, in consequence of the particular terms of this contract, by which the price is made to depend upon the weight. The weight, therefore, must be ascertained in order that the price may be known and paid, and unless the weighing precede the delivery, it can never for these purposes, effectually take place at all."

In *Rhode* v. *Thwaites*, 6 Barn. & Cress. 388, it was decided by *Bayley*, J., that, " where a man sells part of a large parcel of goods, and it is at his option to select part for the vendee, he cannot maintain any action for goods bargained and sold until he has made that selection ; but as soon as he appropriates part for the benefit of the vendee, the property of the article sold passes to the vendee, although the vendor is not bound to part with the possession until he is paid the price." *Holroyd*, J., said, the selection being made by the plaintiff, and notified to the defendant, and he having promised to take the selected goods, " that is equivalent to an actual acceptance by the

defendant," and, "consequently, the plaintiff was entitled to recover, under the count for goods bargained and sold."

In *Hart* v. *Tyler*, 15 Pick. 171, in an action of assumpsit for goods sold and delivered, where it appeared that the plaintiff left the goods with a third person, and desired him to deliver them to the defendant when they should be called for, and they were not called for by the defendant, but remained in the possession of such third person, — it was held, that this was not a delivery of the goods to the defendant, and, therefore, that the count was not supported by the evidence.

In *Davis* v. *Hill*, 3 N. H. Rep. 382, it is decided that, in order to vest a present *right of property* in goods sold, nothing must remain to be done, on the part of the seller, before the commodity is to be delivered.

And under a contract of sale, whereby the vendee purchased and paid for a quantity of hay to be weighed out of a mow whenever he should see fit to move it, — it was held that, under this contract, the property did not so vest in the vendee before the weighing, as to enable him to maintain an action of trover for the hay purchased.

And this is but the general principle recognized in the books, when goods are sold, and any material thing remains to be done, as between the seller and the buyer, before the commodity purchased is to be delivered, either to distinguish the goods or to ascertain the price thereof. Chitty on Contracts, (5th Am. ed.) 375, and cases there cited.

In Massachusetts, the general doctrine upon this subject is admitted to be as laid down in Chitty.

In *Macomber* v. *Parker*, 13 Pick. 183, the Court lay down the doctrine thus: " The general principle is, that where any operation of weight, measurement, counting, or the like, remains to be performed, in order to ascertain the price, the quantity or the particular commodity to be delivered, and to put it in a deliverable state, the contract is incomplete until such operation is performed. But, where the goods or commodities are actually delivered, that shows the intent of the parties to complete the sale, by the delivery; and the weighing, measuring, or counting,

afterwards, would not be considered as any part of the contract of sale, but could be taken to refer to the adjustment of the final settlement as to the price. The sale would be as complete as any sale upon credit before the actual payment of the price."

On a sale of personal property, where any thing remains to be done before the sale can be considered complete, whether to be done by the vendor or the vendee, as between the parties themselves, the property does not pass, *although the property itself is placed in the possession* of the vendee. *Ward* v. *Shaw*, 7 Wendell, 404.

In *Parker* v. *Mitchell*, 5 N. H. Rep. 165, the question was, whether *indebitatus assumpsit* could be maintained for the price of an anvil sold by auction. One of the conditions of the sale was, that the purchaser should have a credit of ninety days, giving good security, and the anvil was struck off to a bidder who removed it a little way in the auction room, but afterwards refused to take it or to give security. It was decided that the action could not be maintained until the expiration of ninety days. The court said, "the circumstance that the buyer took the anvil and moved it, is not conclusive evidence to show a delivery by the seller, or acceptance by the buyer. At farthest, it only shows what might perhaps be considered an acceptance if the seller elected so considered it. For it is clear the buyer had no right to take the anvil until the security was given."

In Chitty on Contracts, (5 Am. ed.) 375, this doctrine is laid down: "If a man buy of a draper twenty yards of cloth, the bargain is void if he do not pay the money, at the price agreed upon, immediately," when the day of payment is not limited.

"But when nothing is specified as to delivery or payment, although every thing may be done to divest the property out of the vendor, so as to throw the risk on the vendee, still there results to the vendor, out of the original contract, a right to retain the goods until payment of the price." Chitty on Contracts, 375.

In order to satisfy the Statute of Frauds, there must be a delivery of the goods by the vendor, with an intention of vesting the right of possession of the whole in the vendee, and there must be an actual acceptance by the latter, with an intention of

taking the possession as owner.   Chitty on Contracts, 390 ; *Phillips* v. *Bristoli*, 2 Barn. & Cress. 513.

Upon a full consideration of the authorities, it seems to us that there was no sufficient delivery shown in the present case, to enable the plaintiff to maintain his action for goods sold and delivered.

The hay in the bay, that was struck off to the defendant, was sold by the ton, and was a part only of a larger quantity, and was never separated from the residue.   According to the case of *Davis* v. *Hill*, it is clear that the property in that portion did not pass to the defendant.   The mere offer, by the plaintiff, to weigh off the hay, did not amount to a separation or delivery of any portion of it to the defendant.

In order to complete the sale and delivery of the portion sold, it was necessary that the same should be separated from the residue, and offered to the defendant, and accepted by him. And so long as, according to the agreement, any thing remained to be done to ascertain the quantity, there could be no sufficient delivery to pass the property, unless such condition precedent was waived, of which there is no pretence in this case.

There is a further reason, according to the authorities, why the hay cannot be regarded as delivered to the defendant. There must be an acceptance on the part of the buyer, as well as an assent on the part of the seller, to constitute a valid delivery.   Here was neither.   In the present case the seller offered to weigh and deliver the hay, provided the defendant would either pay the price or secure its payment.   The defendant refused to do either, and also refused to accept a delivery of the hay from the plaintiff.   Here, then, was no offer by the plaintiff to deliver the hay, discharged of his lien or right to the possession of it, until payment or security should be made.   In so doing, the plaintiff, it is true, asserted only a clear right, which the law secured to him, to retain the possession of the property until the price should be paid.   This is a right which always remains in the seller when no credit is stipulated to be given.   But at the same time, in order to an effectual delivery, such as will pass the property, and entitle the seller to treat the

property as sold and delivered, and to recover the price thereof in an action for goods sold and delivered, the delivery must be such as will amount to a waiver or discharge, of any such right of lien, in the vendor. The refusal of the defendant to accept the hay, at the hands of the plaintiff, and the claim of lien on the part of the plaintiff are as decisive of the question of the delivery of the hay sold, that was upon the scaffold, which was sold in a separate lot, as of that in the bay.

The fact that the hay was in the barn of the defendant, cannot alter the case. It was there before the sale, and the mere fact that it remained there without any exercise of acts of ownership over it afterwards, in connection with the distinct refusal of the defendant to accept the delivery, can add nothing to the claim of the plaintiff to a recovery in the action.

For these reasons, we are of the opinion that the motion of the defendant for a nonsuit should have been granted, and that the ruling of the Court below, denying the motion, was erroneous. The verdict must therefore be set aside, and a

*New trial granted.*