## SMART v. BATCHELDER.

### *Delivery of goods—Attachment.*

The defendant contracted with W. for the sale to him of all the square-edged boards at his mill, at a certain price per thousand for all the merchantable boards in the lot. The quantity and quality of the boards were not ascertained. They were to be transported and delivered by the defendant at a place agreed upon, and were there to be surveyed and paid for, after all had been delivered and the quantity ascertained. *Held*, that, until the boards were delivered and surveyed according to the terms of the contract, the sale was not complete, so but that they could be held by an attaching creditor of the defendant.

The officer took actual possession of the boards, and put a keeper over them until he had lodged a copy of the writ and return with the town-clerk. But in the return he described the boards as lying on land of A, when in fact they lay on the land of B. The defendant, having full knowledge of the attachment, carried away some of the boards and delivered them to W., in performance of his contract of sale. *Held*, that he was liable to the officer therefor in an action of trespass.

By CUSHING, C. J. The officer's return was between these parties conclusive evidence of the attachment, and the land on which the boards were stored being otherwise sufficiently described, the mistaken name may be rejected from the description.

FROM ROCKINGHAM CIRCUIT COURT.

TRESPASS. The plaintiff, a deputy sheriff, having a writ of attachment in favor of the town of Nottingham against the defendant and

two others, on September 27, 1873, attached the real estate of the defendants, and also a quantity of boards. He placed a keeper over the personal property thus attached, who remained in charge of it until a copy of the writ and of the officer's return of the attachment of said boards had been left with the town-clerk according to law; and that being done, the keeper was discharged.

The officer's return was as follows: " I attached as the property of the within named Charles H. Batchelder, all the boards lying on the land of George B. Cilley, and on land of George S. Head, on the west side of the road leading from Lee to Northwood, near the saw-mill of said George B. Cilley, estimated at about sixty thousand." The defendant had at the time about eighty thousand of pine boards lying upon land which was used by the defendant and one Cilley for piling boards and lumber sawed at his mill. About forty thousand of these boards were square-edged, and the rest were round-edged. The land on which they were piled belonged to Parker Brothers, upon the west side of the road, and between the road and the mill. In May, 1873, the defendant had contracted with Wells Waldron for the sale to him of all the square-edged boards. These were in a pile by themselves. The price of the boards was fixed at $19.50 per thousand for all the merchantable boards in the lot. The quantity and quality were not ascertained. They were to be delivered by the plaintiff at the mill of the Cocheco Manufacturing Company at Dover, where they were to be surveyed by the surveyor of said company. They were to be paid for after all the boards had been delivered and the quantity ascertained as aforesaid. There was no memorandum in writing of the contract. A portion of the boards had been delivered at the mill in Dover before this attachment, and surveyed, but no part of the price of the boards had been paid. The defendant was informed by the plaintiff, and knew that the boards had all been attached, but he continued to remove and deliver them in pursuance of his contract with Waldron. After the defendant had thus removed a portion of the boards attached, the plaintiff brought this suit against him. The defendant then procured and furnished to the plaintiff a receiptor, and then delivered to Waldron the remainder of the boards.

These facts being conceded, the court ordered a verdict for the plaintiff for one dollar damages, the amount of damages being agreed upon. Judgment is to be rendered for the plaintiff for that sum, or judgment for the defendant, according to the opinion of the superior court upon these facts.

Transferred by FOSTER, C. J., C. C.

*Small*, for the plaintiff.

*Hatch*, for the defendant.

LADD, J. I think the property in the boards had not passed to Waldron at the time of the attachment. It was only the merchantable

boards in the pile that were to be taken by him. One act to be done, then, before delivery, was the selection and separation of the merchantable boards from the rest: they were to be surveyed. Then they were also to be transported by the seller to the mill of the Cocheco company in Dover. Further, the price was so much per thousand, and the quantity had not been ascertained. This brings the case far within the authorities. When goods are sold by number, weight, or measure, the sale is incomplete until the specified property be separated and identified— *Warren* v. *Buckminster*, 24 N. H. 336 ; and so long as anything remains to be done between the parties, according to the terms of the sale, to ascertain the quantity or price of the goods sold, or to distinguish the goods sold from others, the sale and delivery will not be complete. *Messer* v. *Woodman*, 22 N. H. 172 ; *Zagury* v. *Furnell*, 2 Campb. 240 ; *Rugg* v. *Minett*, 11 East. 210 ; *Wallace* v. *Breeds*, 13 East. 522.

The question then comes, whether the defendant had, as against the officer, a right to remove the property for the purpose of fulfilling his contract with Waldron ; and I think he had not. There can be no doubt but a valid attachment was made in the outset, when the officer took possession of the boards and put a keeper over them until he lodged a copy of the writ and return with the town-clerk. It is said that in his return he did not describe the boards with sufficient accuracy. He described them as lying on the land of one man, when in fact they were on the land of another. I think it is not necessary to inquire whether that return would be sufficient to hold the property under all circumstances against a subsequent attaching creditor, either with or without notice of the former attachment ; for there is no question but that the defendant knew of the attachment, and his acquiescence in the claim of the officer that it had not been abandoned or lost is shown by his conduct in procuring a receiptor. Under these circumstances I think he was liable in trespass for removing them. *Cooper* v. *Newman*, 45 N. H. 339, and authorities cited. My conclusion is, that according to the provisions of the case there should be judgment for the plaintiff for one dollar.

CUSHING, C. J. The first question is, whether here had been a valid sale to Waldron as against the creditors of the defendant. There is no evidence of any actual delivery to or possession by Waldron, or any explanation of the absence of possession. It seems hardly necessary to cite authorities to show that under such circumstances the sale was not complete as against the defendant's creditors, and the property was therefore open to attachment.

According to the cases of *Brown* v. *Davis*, 9 N. H. 76, *Lathrop* v. *Blake*, 23 N. H. 46, *Dickinson* v. *Lovell*, 35 N. H. 9, the officer's return of the attachment is conclusive between these parties. Of course, the property described in the return must be, as in the case of all writings, identified by extrinsic evidence. The lot of boards is described as lying on the land of George B. Cilley and land of George S. Head, on

the west side of the road leading from Lee to Northwood, near the saw-mill of said George B. Cilley. There is no suggestion of uncertainty about the identity of the boards lying on land on the west side of the road leading from Lee to Northwood, near the saw-mill of Cilley; but it is said that the land, though occupied by Cilley and the defendant, was really owned by other parties. If it should be considered that such occupation of Cilley was not sufficient to answer that part of the description, such description might be rejected, the remaining description leaving no doubt.

The lumber, being open to attachment, and the officer's return of the attachment being conclusive, the defence fails, and there must be judgment on the verdict according to the agreement.

SMITH, J. I think that, not only as against Batchelder, but as against Waldron, here was a valid attachment. I infer that it is intended to be understood that neither Head nor Cilley owned any land on the west side of the road leading from Lee to Northwood. Rejecting, then, that part of the return, the boards would be described as lying on the west side of the road leading from Lee to Northwood, near the saw-mill of George B. Cilley, estimated at about sixty thousand. The quantity proved to be eighty thousand, but the estimate as to quantity was only an additional description of the boards for the purpose of further identifying them. Any one examining the return in the office of the town-clerk would have been informed that the plaintiff had attached as the property of the defendant all the boards lying on the west side of the above named road, near the defendant's saw-mill, estimated at sixty thousand. The further information, that they were on land of Cilley and Head, would not have misled one making the examination, because there were no boards piled on their land; and the defendant himself, even if he had not had personal information of the attachment, knew that the land on which the boards were piled did not belong to him or Head.

At the time of the attachment the property in the boards had not passed to Waldron. The contract with him provided for a delivery by the defendant of the boards at the mills of the Cocheco company in in Dover, to be there measured by the surveyor of the company, and to be paid for when the whole should be delivered. The property in the boards would thus clearly remain in the defendant until delivered and surveyed, according to the well established rule that when some act remains to be done in relation to the articles which are the subject of the sale, as that of measuring or weighing, and there is no evidence tending to show an intention of the parties to make an absolute and complete sale, the performance of such act is a prerequisite to the consummation of the contract, and, until it is performed, the property does not pass to the vendee. *Riddle* v. *Varnum,* 20 Pick. 280 ; *Foster* v. *Ropes,* 111 Mass. 10 ; *Prescott* v. *Locke,* 51 N. H. 94 ; *Jenness* v. *Wendell,* 51 N. H. 63.

The exceptions are overruled, and there must be

*Judgment on the verdict.*